UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TODD ALEXANDER-CLOUD ABSHIRE,**<br>      Plaintiff<br><br>versus<br><br>**LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES**<br>      Defendant | **CIVIL ACTION NO. 16-669**<br><br>**JUDGE JACKSON**<br><br>**MAGISTRATE JUDGE WILDER-DOOMES** |

**PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

**NOW INTO COURT,** through undersigned counsel, comes the Plaintiff, Todd Alexander-Cloud Abshire, a person of full age of majority, a citizen of and domiciled in Calcasieu Parish, State of Louisiana who, pursuant to this Court's Order (R.Doc. 6), respectfully sumbits his comprehensive first amended and supplemental complaint as follows:

1.

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1331. This is an action for damages arising from the Defendant's violation of the Federal Rehabilitation Act, 29 U.S.C. § 701, *et seq*. This court has supplemental jurisdiction over the Plaintiff's state law claims in accordance with 28 U.S.C. § 1367 arising from the Defendant's violations arising under the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq*.

2.

Venue is appropriate in the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1391(b), in that the Defendant, Louisiana Department of Wildlife and Fisheries ("LDWF"), is an agency of the State of Louisiana.

3.

The Plaintiff is seeking declaratory and injunctive relief and compensatory damages.

4.

The actions of the Defendant described herein constitute violations of the Federal Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, more specifically 29 U.S.C. § 794, and the Louisiana Discrimination Law ("LEDL") La. R.S. 23:301, *et seq.*, more specifically La. R.S. 23:323.

5.

The Plaintiff, Todd Alexander-Cloud Abshire, commenced full-time employment with LDWF, on or about December 9, 2013 in LDWF's Enforcement Division as a Wildlife Enforcement Cadet. The Plaintiff attended the LDWF Enforcement Academy from December 9, 2013 to June 10, 2014. On June 10, 2014, the Plaintiff began working at District B of the LDWF Enforcement Region 5.

6.

The Plaintiff was a good and faithful employee and served the interests of his employer to the best of his ability for nearly two (2) years. In fact, during the Plaintiff's employment, he received no disciplinary actions and was promoted to the position of Wildlife Enforcement Agent almost two (2) months before the typical six (6) month training period.

7.

The Plaintiff alleges upon information and belief, that LDWF is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794. The Defendant has waived its sovereign immunity through its acceptance of federal funding.

8.

At all times relevant hereto, the Plaintiff was a disabled individual within the meaning of the Federal Rehabilitation Act as he suffers from Posttraumatic Stress Disorder (hereinafter "PTSD") as a result of his military service. As a result of his PTSD, the Plaintiff has a permanent military service connected disability rating of 80%. The Plaintiff's PTSD imposes several limitations on the Plaintiff's major life activities, including, but not limited to, limitations to the Plaintiff's memory, ability to concentrate, and ability to interact socially. Additionally, the Plaintiff's PTSD also causes the Plaintiff to suffer from depression, anxiety, and nightmares.

9.

Plaintiff's supervisors with LDWF had been informed as to the nature and extent of the Plaintiff's disability and the limitations caused by his disability. Plaintiff first informed his supervisors of his disability during the hiring process and disclosed that he was taking prescribed medication for his PTSD.

10.

On or about June 16, 2014, the Plaintiff informed his first line supervisor, Lt. Beau Robertson, of his veteran status, of his service connected PTSD, and of the limitations caused by his disability. On or about August 6, 2014, the Plaintiff informed his second line supervisor, Capt. Robert Buatt, of his veteran status, of his service connected PTSD, and of the limitations caused by his disability.

11.

Despite the limitations created by his disability, the Plaintiff was qualified for his position with the LDWF within the meaning of the Federal Rehabilitation Act and LEDL as he successfully performed the essential functions of his position.

12.

During his employment at District B of the LDWF Enforcement Region 5, beginning in June 2014, the Plaintiff made repeated requests for reasonable accommodations due to his disability and limitations.

13.

However, the Defendant's agents and employees, acting within the course and scope of their employment, have repeatedly failed to engage in the interactive process to accommodate the Plaintiff's known limitations and have failed to provide the Plaintiff with reasonable accommodations for his known limitations. The Plaintiff alleges that the Defendant was in bad faith for refusing to engage in an interactive process as required by law.

14.

Such failures include, but are not limited to, the following:

a. On or about August 6, 2014, when the Plaintiff advised his second level supervisor, Capt. Buatt, of his disability, the Plaintiff also requested a reasonable accommodation in the form of monthly performance evaluations and training with his supervisors. The Plaintiff requested this accommodation because his disability placed limitations on his memory and ability to concentrate and repetition in the form of more frequent interactions with his supervisors would accommodate those limitations and alleviate the Plaintiff's anxiety and frustration associated with his disability. However, Capt. Buatt did not engage in the interactive process regarding these requests and the Plaintiff's requests for these reasonable accommodations were refused.

b. On or about October 13, 2014, and again on or about November 14, 2014, the Plaintiff, in a conversation with Lt. Robertson and Capt. Buatt, again requested a reasonable

    accommodation similar to his earlier requests - monthly performance evaluations and training with his supervisors regarding paperwork and other work tasks that the Plaintiff was having trouble completing. Lt. Robertson and Capt. Buatt, without engaging in the interactive process, replied that there were no accommodations available to the Plaintiff and that he (the Plaintiff) would just have to adapt to the way things are done at the LDWF.

c. On or about February 2015, the Plaintiff began experiencing increased problems with his PTSD including nightmares, trouble sleeping, and heightened anxiety. The Plaintiff reported to his supervisors that he was experiencing problems completing his paperwork as a result of his increased PTSD symptoms. Plaintiff requested reasonable accommodations from Lt. Robertson to assist him with problems he was having completing his paperwork. Specifically, the Plaintiff requested to review some of Lt. Robertson's completed reports so that the Plaintiff could compare his work product to that of his supervisors. Lt. Robertson, without engaging in the interactive process, replied that this was not possible, that he (Lt. Robertson) did not understand why the Plaintiff needed examples of completed reports, and refused the Plaintiff's requests.

15.

The Plaintiff's repeated requests for accommodations were met, and continued to be met, with indifference and inaction, and the Plaintiff continued to suffer increased symptoms of his PTSD because of the Defendant's inaction, including, but not limited to, increased anxiety and depression. The Plaintiff's anxiety also increased because he believed he was being set up for failure by his supervisors.

16.

In April, 2015, the Plaintiff's PTSD symptoms increased to the point where he was forced to take time off of work. During this time, the Plaintiff informed his supervisors of the increased symptoms of his PTSD and that he was concerned about his job performance. The Plaintiff was reassured by Lt. Robertson that there was no reason for the Plaintiff to be concerned about his job performance. However, even after learning of the Plaintiff's increased stress, anxiety, and depression, the Plaintiff's supervisors never engaged in the interactive process or reasonably accommodated the Plaintiff's known limitations.

17.

On or about May 4, 2015, following the Plaintiff's return to work, he was instructed to report to the Region 5 main office. Upon arrival, Capt. Buatt and Lt. Robertson met with the Plaintiff and informed him that he was receiving a formal counseling session due to his poor job performance in April. Plaintiff was advised this was not a disciplinary action, but instead just a written warning. However, at no time during this meeting did the Plaintiff's supervisors engage in an interactive process to determine if there could be any accommodations made for the Plaintiff's limitation. They also did not consider any of the Plaintiff's previously requested reasonable accommodations.

18.

The Defendant's failure to engage in the interactive process and failure to provide Plaintiff with reasonable accommodations for his known limitations are violations of the Federal Rehabilitation Act and the LEDL.

19.

Moreover, the Defendant's failure to engage in the interactive process and failure to provide the Plaintiff with reasonable accommodations for his known limitations caused significant mental and emotional anguish and distress to the Plaintiff.

20.

On May 7, 2015, the Plaintiff was scheduled to work. The night before this scheduled shift, the Plaintiff got very little sleep since he had worked a split shift and did not arrive home until midnight. On the morning of May 7, 2015, the Plaintiff took his PTSD medication on his way to work, which is later in the day than usual for the Plaintiff. Upon his arrival to work, the Plaintiff kept to himself and decided to focus only on his paperwork due to his lack of rest and the fact that he took his medication late. The Plaintiff's co-workers mentioned that they had noticed that he (the Plaintiff) was acting unusually, so he explained to his co-workers that he did not get much sleep and that he took his medication late that morning. Unbeknownst to the Plaintiff, his co-workers informed Lt. Robertson of the situation. Lt. Robertson then arrived at the office and the Plaintiff explained to him that he (Plaintiff) had gotten very little rest and that he had taken his medication late that morning. Nevertheless, Lt. Robertson administered the Standardized Field Sobriety Test to the Plaintiff. Despite the Plaintiff's explanation and his passing of the field sobriety test, Lt. Robertson called an ambulance to have the Plaintiff further examined. Upon examination by the emergency medical personnel, the Plaintiff showed only elevated blood pressure and was otherwise okay. However, Lt. Robertson ordered the Plaintiff to go home and he (Lt. Robertson) confiscated the Plaintiff's firearm and equipment and required that he leave his patrol vehicle at the office.

21.

On or about June 13, 2015, the Plaintiff was working with a co-worker, Agent Jake Hoover. Agent Hoover inquired about the events that occurred on May 7, 2015 and asked the Plaintiff "so what's this I hear about you showing up drunk to work and getting sent home?" The Plaintiff inquired as to where Agent Hoover had heard such rumors and he (Agent Hoover) stated that other agents were of the opinion that the Plaintiff was a "crazed alcoholic".

22.

On or about June 18, 2015, the Plaintiff spoke with Capt. Buatt and Lt. Robertson regarding the rumors that he had heard from Agent Hoover. The Plaintiff advised his supervisors that he felt he was being harassed because of fabricated rumors of being intoxicated at work and being ordered to leave work. Plaintiff further stated he wanted to file a complaint. Both Capt. Buatt and Lt. Robertson stated that the Plaintiff should just ignore the rumors. The Plaintiff reiterated that this was important to him because it concerned his PTSD. Capt. Buatt and Lt. Robertson replied to the Plaintiff saying that he (the Plaintiff) just needed to "suck it up." The Plaintiff was not allowed to file a complaint regarding this situation.

23.

Following this meeting, the Plaintiff's work environment became increasingly tense and the Plaintiff was informed by Sgt. Stuart Guillory that Capt. Buatt was inquiring about his (Plaintiff's) job performance.

24.

On or about July 7, 2015, the Plaintiff worked with Lt. Robertson and Capt. Buatt on an assignment. During the assignment, the Plaintiff spoke with Lt. Robertson about his (Plaintiff's) upcoming annual evaluation and that he was looking forward to it. Lt. Robertson inquired as to

why the Plaintiff was excited about his annual evaluation and the Plaintiff responded that he thought that feedback was an important aspect of work and something that he (Plaintiff) relied upon heavily, which is why he (Plaintiff) had requested such feedback from Capt. Buatt and Lt. Robertson on several occasions in the past.

25.

On or about August 5, 2015, the Plaintiff reported to the Region 5 office for his annual evaluation with Capt. Buatt and Lt. Robertson. At this time, but at no time prior, the Plaintiff was informed by Capt. Buatt and Lt. Robertson that he (Plaintiff) was being rated as "needs improvement/unsuccessful." At this time, Lt. Robertson and Capt. Buatt explained the reasoning for his rating, which included the formal counseling that he had received in May 2015 that they had previously advised served only as a warning and would not affect his annual evaluation. In response, the Plaintiff informed Capt. Buatt and Lt. Robertson that he was never made aware of any performance deficiencies and that any performance issues had never been brought to his attention previously, despite the fact that he (Plaintiff) had repeatedly requested accommodations in the form of meetings with Capt. Buatt and Lt. Robertson to provide him guidance as to his job performance. The Plaintiff also informed Capt. Buatt and Lt. Robertson that he had been requesting reasonable accommodations since he had joined Region 5, but had been told either that he did not need them or that such accommodations were unavailable. The Plaintiff also stated that in some instances his requests were ignored. Despite his disagreement with the evaluation, the Plaintiff signed the evaluation as he had been reminded by Capt. Buatt that he was still a probationary employee and was required to sign.

26.

Following his evaluation, the Plaintiff returned to work. However, on or about August 10, 2015, the Plaintiff, while on patrol, was instructed to report to the Region 5 office to "fix a mistake on some paperwork." Upon arrival to the Region 5 office, the Plaintiff was informed by Lt. Jesse Savoie that he had been ordered to terminate the Plaintiff.

27.

The Plaintiff was terminated because of his disability in violation of the Federal Rehabilitation Act and the LEDL. The Plaintiff was also terminated in retaliation for engaging in protected conduct, a violation of the Federal Rehabilitation Act.

28.

The Defendant's discriminatory and retaliatory termination of the Plaintiff has caused him to suffer substantial past, present, and future wage loss, and loss of earnings capacity, loss of enjoyment of his personal and professional lives, damage to his personal and professional reputations, and mental and emotional anguish and distress.

29.

The Defendant received notice thirty (30) days prior to the filing of this action when it was notified of the Plaintiff's EEOC charge of discrimination, as required by La. Rev. Stat. 23:303(C).

30.

The Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, the Plaintiff, Todd Alexander-Cloud Abshire, respectfully prays for a judgment against Defendant, the Louisiana Department of Wildlife and Fisheries as follows:

1. For a declaratory judgment finding that the Defendant, because of the actions described hereinabove violated the Federal Rehabilitation Act, 29 U.S.C. § 701, *et seq*., and the Louisiana Discrimination Law ("LEDL") La. R.S. 23:301, *et seq*.;

2. That the Plaintiff be reinstated as an employee of the Defendant in the same or similar position with the same or similar pay and benefits to that from which he was wrongfully terminated or be awarded front pay with the restoration of full seniority rights and all other benefits retroactive to the date of discharge;

3. Requiring Defendant to provide the reasonable accommodations sought by Plaintiff;

4. That the Plaintiff be awarded all wages, salary, fringe benefits, and other compensation lost as a result of Defendant's unlawful conduct in an amount to be determined by the jury;

5. For such compensatory damages as are reasonable on the premises, together with legal interest from the date of judicial demand;

6. For reasonable attorney's fees, litigation expenses, and all costs of this proceeding; and

7. That the Plaintiff be awarded other and further relief as the Court deems just and appropriate.

Respectfully Submitted:

**SMITH LAW FIRM**

/s/ Justin M. DeLaune
**J. ARTHUR SMITH, III**
La. Bar Roll No. 07730
**JUSTIN M DELAUNE**
La. Bar Roll No. 34512
830 North Street
Baton Rouge, LA  70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
Email:  jasmith@jarthursmith.com
           jdelaune@jarthursmith.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 18th day of November, 2016, I electronically filed a copy of the foregoing pleading with the Clerk of Court using the CM/ECF electronic filing system, which will send a notice of electronic filing to all attorneys of record.

                                                                                            /s/ Justin M. DeLaune
                                                                                              Justin M. DeLaune